UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MELISSA ANN WRIGHT, court appointed guardian of BROGAN ZANE WRIGHT; KAREN REIGER; and MIKE REIGER, ) ) ) ) | 2:11-CV-01575-LRH-GWF |
| Plaintiffs, ) ) | ORDER |
| v. ) ) | |
| WATKINS AND SHEPARD TRUCKING, INC., a Montana corporation; GREGORY ANDREW BRITT, an individual; DOES 1 through 5 and ROES 1 through 5, ) ) ) ) ) | |
| Defendants. ) ) | |

This is a motor vehicle negligence case. Before the court is defendants Watkins and Shepard Trucking, Inc. ("Watkins & Shepard") and Gregory Britt's Motion for Partial Summary Judgment (#38[1]). Plaintiffs Melissa Ann Wright, Karen Reiger, and Mike Reiger have responded (#41), and Defendants have replied (#45).

**I.     Facts**

Defendant Britt hit Brogan Zane Wright with his semi-truck on June 5, 2011, just outside of Alamo, Nevada. The accident occurred on U.S. Highway 93, a two-lane highway, around 9:25 p.m. Wright's truck had broken down as he was headed north, and he had pulled over to the righthand shoulder. He had turned his emergency lights on, and he then called his uncle, plaintiff Mike

---

[1] Refers to the court's docket entry number.

Reiger, for assistance.

Reiger soon arrived with Wright's grandmother, plaintiff Karen Reiger, parking his truck and flatbed trailer in front of Wright's truck along the highway's northbound shoulder. Reiger also turned on his emergency lights. The three relatives walked from Reiger's truck towards Wright's truck, heading south and facing on-coming northbound traffic. Wright was walking about two feet into the northbound travel lane, while his relatives walked along the shoulder.

Britt was traveling southbound in what the parties agree was the course and scope of his employment with Watkins & Shepard. The night was moonless and the stretch of highway, dark. As Britt neared Wright's truck, he was stuck behind a slow-moving SUV. Britt saw a truck's flashing headlights, and, recognizing the truck to be parked on the shoulder, began passing the SUV by moving into the northbound lane.

As he passed the SUV, Britt saw Wright only too late. Britt's driver's-side mirror struck Wright in the back of his head, causing severe injuries. Mike and Karen Reiger were injured by flying debris.

## II.   Discussion

Plaintiffs allege claims of negligence, negligent infliction of emotional distress, and negligent hiring and supervision against Defendants. Discovery closed in November 2012, but the court reopened discovery in response to an anonymous letter Plaintiffs had received regarding Watkins & Shepard's hiring practices. In light of the reopened discovery, the court now denies Defendants' Partial Motion for Summary Judgment without prejudice.[2]

However, the parties dispute one matter of law requiring no factual development: under Nevada law, may a plaintiff recover on claims against an employer under both a theory of respondeat superior and a theory of negligent hiring and supervision when the employer admits that

---

[2] Plaintiffs originally asked the court to "stay adjudication" on Defendants' Partial Motion for Summary Judgment, but given the likelihood that the extended discovery may result in additional evidence relevant to Defendants' Motion, denial with leave to refile is the most efficient course.

the employee was acting within the course and scope of his employment? It is to this question the court now turns.

Defendants argue that Plaintiffs may not recover on a theory of derivative liability (respondeat superior) and on a theory of direct liability (negligent hiring) against Watkins & Shepard. In support, they cite *Cruz v. Durbin*, 2011 WL 1792765 (D. Nev. May 11, 2011). There, the defendant collided with the plaintiff as the plaintiff was pulled over to the side of the road in order to repair his truck. 2011 WL 1792765 at *1. The court answered the question as to "whether a negligent hiring and training claim adds anything to a direct negligence claim after the employer admits the employee was acting under the scope of his employment" with a clear "no." *Id.* at *3. Predicting that the Nevada Supreme Court would do likewise, the court concluded, "Most of the courts to address the question have noted that the bar to a negligent hiring or training action after an employer admits the employee was acting within the scope of employment ('the *McHaffie* rule') is the majority rule." *Id.* (citing *McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995)).

In *McHaffie*, the Court advanced three rationales for its "rule." First, where derivative liability is established, "the evidence submitted to establish [direct liability] serves no real purpose." *McHaffie*, 891 S.W.2d at 826. Second, such evidence may be "inflammatory" and will almost certainly be "irrelevant." *Id*. Third, other avenues—like punitive damages claims—will provide a route for recovery in the event an employer's culpability exceeds that of its employee's imputed negligence. *Id*.

These rationales are persuasive, but they overlook the irreducible proposition that the doctrine of vicarious liability and the tort of negligent hiring and supervision address different conduct. The first addresses the conduct of the employee and the second addresses the conduct of the employer. More importantly, each theory of liability is motivated by different concerns. The doctrine of vicarious liability restricts employer liability to employee conduct that "should be considered as one of the normal risks to be borne by the business." Restatement (Second) of Agency § 229 comment a (1958). This is the meaning of the "in the course and scope of

3

employment" requirement. *See, e.g.,* Eric A. Posner & Alan O. Sykes, *An Economic Analysis of State & Individual Responsibility under International Law*, 9 Am. L. & Econ. Rev. 72, 81-82 (2007). The tort of negligent hiring and supervision creates employer liability when the employer exacerbates the "normal risks to be borne by the business" through the employer's own negligence. Thus, each theory of liability aims at different risky conduct: vicarious liability makes the employer responsible for the normal risks of doing business, while the tort makes the employer responsible for any abnormal risks that she herself creates.

To be sure, each theory of liability addresses similar conduct. But not identical conduct: an employer who knowingly employs a reckless machine operator creates a risk that is not a "normal" one, and therefore this risk is not addressed by the theory of vicarious liability. Thus, it is not true (at least under Nevada law) that "the evidence submitted to establish [direct liability] serves no real purpose" where the plaintiff also pursues recovery under a theory of respondeat superior. *See McHaffie*, 891 S.W.2d at 826; *see also James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330-32 (S.C. 2008) (rejecting *McHaffie*). Rather, in this circumstance "the cause of action against the employer is no longer simply derivative of, or dependent upon, the negligence of the employee." *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 333 (S.C. 2008) (Moore, J., dissenting). The *McHaffie* Court's second rationale, that the evidence used to establish direct liability may taint the jury's judgment with respect to vicarious liability, is a practical concern meriting careful evidentiary stewardship. It is not, however, a concern that merits the elimination of a cause of action. As the *James* Court found, "In our view, the argument that the court must entirely preclude a cause of action to protect the jury from considering prejudicial evidence gives impermissibly short-shrift to the trial court's ability to judge the admission of evidence and to protect the integrity of trial, and to the jury's ability to follow the trial court's instructions." *Id*. at 331. Finally, the *McHaffie* Court found that punitive damages claims could provide for recovery in the event an employer's culpability exceeds that of its employee, eliminating the need for direct liability. But this rationale does not wash in Nevada, where punitive damage claims require clear and convincing evidence, but a civil tort

1 requires only proof by preponderance. *See Bongiovi v. Sullivan*, 138 P.3d 433, 450 (Nev. 2006).
2 Therefore, a punitive damages claim is not a ready substitute for the tort of negligent hiring and
3 supervision.
4       These considerations imply that the Nevada Supreme Court would not adopt the "majority"
5 approach as set out by *McHaffie*. *See Candelaria Industries v. Occidental Petroleum Corp.*, 662 F.
6 Supp. 1002, 1004 (D. Nev. 1984) (predicting how the Nevada Supreme Court would rule in order
7 to determine an issue of Nevada law). Accordingly, Defendants are not entitled to summary
8 judgment on Plaintiffs' negligent hiring and supervision claim.
9       IT IS THEREFORE ORDERED that Defendants' Partial Motion for Summary Judgment
10 (#38) is DENIED without prejudice.
11       IT IS SO ORDERED.
12       DATED this 13th of September, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE