1

2

3

4

5

6                             UNITED STATES DISTRICT COURT

7                                  DISTRICT OF NEVADA

8                                          * * *

9   MELISSA ANN WRIGHT, court appointed      )
    guardian of BROGAN ZANE WRIGHT;          )        2:11-CV-01575-LRH-GWF
10  KAREN REIGER; and MIKE REIGER,           )
                                             )
11              Plaintiffs,                  )
                                             )
12  v.                                       )        ORDER
                                             )
13  WATKINS AND SHEPARD TRUCKING,            )
    INC., a Montana corporation; GREGORY     )
14  ANDREW BRITT, an individual; DOES 1      )
    through 5 and ROES 1 through 5,          )
15                                           )
                Defendants.                  )
16  _____ )

17          Before the Court is Defendants Watkins & Shepard Trucking, Inc. ("Watkins & Shepard")

18  and Gregory Andrew Britt's ("Britt") (collectively "Defendants") Renewed Motion for Partial

19  Summary Judgment.  Doc. #90.[1]  Plaintiffs Melissa Ann Wright, Brogan Zane Wright ("Wright"),

20  Karen Reiger, and Mike Reiger ("Reiger") filed an Opposition (Doc. #94), to which Defendants

21  replied (Doc. #101).

22  **I.      Factual Background**

23          This is a personal injury action arising out of a tractor trailer truck accident at approximately

24  9:45 p.m. on June 5, 2011, in which Plaintiffs Wright and Reiger sustained injuries.  Doc. #94 at 4.

25  Brogan Wright was standing on the northbound side of the highway near his brother's stationary

26
    _____
    [1] Refers to the Court's docket entry number.

vehicle when, as Britt drove by, his driver-side mirror struck Wright on the back of the head.  *Id.*
Mike Reiger was struck with debris from the accident, and Karen Reiger was forced face-down to
the ground.  Britt had been driving in the southbound lane but moved to the northbound lane near
the position of Reiger's vehicle in order to pass a slow-moving sport utility vehicle ("SUV") in the
southbound lane.  Britt saw a figure near Reiger's stationary vehicle when he moved to the
northbound lane but was not able to stop his truck before impact.  Plaintiffs allege claims of
negligence, negligent infliction of emotional distress, and negligent hiring and supervision against
employee/driver Britt and employer Watkins & Shepard.  Doc. #1, Ex. A at 6-9.

Defendants raise fourteen "undisputed material facts": 1) the accident occurred at 9:25 p.m.
on a dark night in rural eastern Nevada; 2) Wright was positioned approximately two feet west of
the east side fog line despite being warned to stay out of the roadway; 3) Wright was wearing a
dark t-shirt and dark pants; 4) the rear tires of Reiger's car were touching the fog line on the east
side of the highway; 5) the position of Reiger's truck blocked Wright's access to the shoulder of the
highway; 6) there is no evidence that Britt saw Wright standing on the highway before passing the
SUV; 7) Britt was in the course and scope of his employment at Watkins & Shepard at the time of
the accident; 8) the Nevada Highway Patrol ("NHP") determined that Wright was illegally
positioned on the highway and was not visible; 9) in early 2013, the U.S. Department of
Transportation ("USDOT") conducted an audit of Watkins & Shepard, but the audit did not focus
on Britt; 10) Britt purchased fuel at 11:30 p.m. the night before the accident and incorrectly logged
the time; 11) there is no evidence that a Watkins & Shepard officer ratified any allegedly negligent
conduct by Britt; 12) there is no evidence that a Watkins & Shepard officer should have known that
Britt was a dangerous driver; 13) there is no evidence that Watkins & Shepard violated any laws or
company policies in employing or training Britt; 14) Plaintiffs have not pleaded a claim for
punitive damages against Watkins & Shepard.  Doc. #90 at 3-5.

Plaintiffs raise a number of objections to Defendants' characterization of the facts.  First,
Plaintiffs state that the tires of Reiger's trailer were within the fog line, not touching the fog line.

Doc. #94 at 3.  Second, Plaintiffs state that the position of Reiger's trailer did not block Wright's access to the shoulder of the highway before passing the SUV.  *Id.*  Third, Plaintiffs state that there is a dispute as to whether Britt was able to see Wright on the highway before passing the SUV.  *Id.*  Fourth, Plaintiffs state that Britt's fuel purchase occurred at 12:30 a.m. the day of the accident, not 11:30 p.m. the prior evening, as evidenced by the fuel receipt.  *Id.* at 3-4.  Finally, Plaintiffs state that there is a dispute as to whether Watkins & Shepard violated its internal policy to fire drivers who cause preventable accidents, noting that Britt was involved in a preventable accident before the accident at issue here but was not fired.  *Id.* at 4.

According to plaintiffs, Britt was awake for a minimum of 17.75 hours directly prior to the accident and had been driving without a break since 3:30 p.m. that day, or more than six straight hours.  *Id.*  Britt logged eight hours of consecutive sleep as required under federal law, but plaintiffs state that fueling logs indicate that the sleep log was falsified and that he actually slept less than eight hours.  *Id.* at 5.  Plaintiffs also allege a dispute regarding a thirty-four mile personal trip by Britt either the day of, or the day before, the accident.  *Id.* at 8-9.  Britt originally said that the personal drive occurred the day of the accident, but subsequently stated that the personal trip occurred the day before the accident.  *Id.* at 9.

Britt stated, for example, that he was aware that Reiger's emergency flashers, which were on at the time of the accident, indicated that the truck was stopped on the side of the road.  *Id.* at 11-12.  Despite being aware of the location of Reiger's truck, Britt decided to pass a slow-moving SUV.  *Id.*  Britt first saw Wright when he began to pass the SUV.  *Id.* at 12.  Britt did not take any action to avoid the accident, and looked away once it became clear that he would not be able to prevent a collision.  *Id.*  Britt took a hiatus from Watkins & Shepard immediately after the accident, but later returned to work after undergoing retraining.  *Id.* at 13.  Britt described this retraining as an "overview of the company policies and procedures," and a "refresher course."  *Id.*

On December 10, 2012, Defendants filed a Motion for Partial Summary Judgment, seeking dismissal of Plaintiffs' claims against Watkins & Shepard for punitive damages based on negligent

1  hiring and supervision.  Doc. #38.  On May 16, 2013, the Court reopened discovery in response to

2  an anonymous letter Plaintiffs received regarding Watkins & Shepard's hiring practices.  *See* Doc.

3  #59.  On September 13, 2013, the Court denied Defendants' Partial Motion for Summary Judgment

4  without prejudice.  *See* Doc. #69.  On October 4, 2013, Defendants filed a Motion to Reconsider or

5  to certify the question to the Nevada Supreme Court (Doc. #72), which the Court denied (Doc.

6  #76).  The Court invited Defendants to resubmit their Motion if evidence revealed that Plaintiffs'

7  claim of negligent hiring and supervision was without merit.  Doc. #76 at 3.  Defendants filed this

8  Renewed Motion for Partial Summary Judgment on August 29, 2014.  Doc. #90.

9  **II.    Legal Standard**

10         Summary judgment is appropriate only when the pleadings, depositions, answers to

11  interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record

12  show that "there is no genuine issue as to any material fact and the movant is entitled to judgment

13  as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the

14  evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the

15  light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

16  *Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154

17  (9th Cir. 2001).  A motion for summary judgment can be complete or partial, and must identify

18  "each claim or defense—or the part of each claim or defense—on which summary judgment is

19  sought."  Fed. R. Civ. P. 56(a).

20         The party moving for summary judgment bears the initial burden of informing the court of

21  the basis for its motion, along with evidence showing the absence of any genuine issue of material

22  fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the

23  burden of proof, the moving party must make a showing that no "reasonable jury could return a

24  verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On

25  an issue as to which the nonmoving party has the burden of proof, however, the moving party can

26  ///

1  prevail merely by demonstrating that there is an absence of evidence to support an essential element

2  of the non-moving party's case. *Celotex*, 477 U.S. at 323.

3       To successfully rebut a motion for summary judgment, the nonmoving party must point to

4  facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson*

5  *Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect

6  the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Where

7  reasonable minds could differ on the material facts at issue, summary judgment is not appropriate.

8  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered

9  genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

10  party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of

11  the party's position is insufficient to establish a genuine dispute; there must be evidence on which a

12  jury could reasonably find for the party. *See id.* at 252. "[S]peculative and conclusory arguments

13  do not constitute the significantly probative evidence required to create a genuine issue of material

14  fact." *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982).

15       In determining whether to grant or deny summary judgment, it is not a court's task "to scour

16  the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th

17  Cir. 1996) (internal quotation marks omitted). Rather, a court is entitled to rely on the nonmoving

18  party to "identify with reasonable particularity the evidence that precludes summary judgment." *Id.*

19  **III.   Discussion**

20       Defendants argue that despite having another chance to collect evidence to support their

21  claims, "Plaintiffs are no closer to stating a basis for (let alone pleading) a claim for punitive

22  damages against Watkins & Shepard and Mr. Britt." Doc. #90 at 7. Defendants add that the only

23  "recently discovered" evidence was that 1) in 2013, USDOT conducted an audit of Watkins &

24  Shepard; 2) on July 4, 2011, Britt logged thirty-four "empty personal miles"; 3) on July 4, 2011 at

25  11:30 p.m., Britt purchased fuel in Jerome, Idaho and incorrectly logged the time; and 4) Britt

26  applied to the State of California for unemployment benefits in 2011. *Id.* Defendants argue that

1    "[n]one of these facts, collectively or on their own, come close to supporting an award of punitive

2    damages against Mr. Britt or Watkins & Shepard." *Id.*

3         Plaintiffs argue that this new evidence establishes that there remain disputed issues of

4    material facts regarding their punitive damages claims against Watkins & Shepard and Britt.  First,

5    the USDOT audits are material because despite telling the investigator that "company policy is to

6    terminate a driver that is in a preventable accident," Britt was not terminated after causing a

7    preventable accident.[2]  Doc. #94 at 4.  Second, the new information regarding the thirty-four empty

8    personal miles show that since plaintiffs initially thought they had accurate log books, "issues

9    regarding the driver's fatigue were not fully developed." *Id.* at 9.  Third, the purchase of fuel

10   occurred at 12:30 a.m. the day of the accident, which indicates that Britt falsified his log books and

11   did not have a continuous eight hours of sleep as required by law. *Id.* at 6-7.  Fourth, Britt's

12   attempt to obtain unemployment benefits was part of Watkins & Shepard's attempt to conceal

13   Britt's post-accident suspension. *Id.* at 14.  Based on all of the evidence collected so far, Plaintiffs

14   argue that there are genuine disputes as to Britt's liability for punitive damages, and that genuine

15   disputes also exist as to Watkins & Shepard's punitive damages liability because they knew of the

16   potential danger Britt could cause and ratified his conduct through negligent hiring and training

17   practices. *Id.* at 16-18.

18         Under Nevada law, in order to recover for punitive damages, the plaintiff must show "by

19   clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice,

20   express or implied." Nev. Rev. Stat. ("NRS") § 42.005(1).  Oppression means "despicable conduct

21   that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the

22   person." § 42.001(4).  Fraud means "an intentional misrepresentation, deception or concealment of

23   a material fact known to the person with the intent to deprive another person of his or her rights or

24   property." § 42.001(2).  Malice means "conduct which is intended to injure a person or despicable

25   conduct which is engaged in with a conscious disregard for the rights of others." § 42.001(3).

26

---

[2] The prior preventable accident was a minor incident that did not involve any injuries.

1   Conscious disregard means "the knowledge of the probable harmful consequences of a wrongful

2   act and a willful and deliberate failure to act to avoid those consequences."  § 42.001(1).

3          **A.  Punitive Damages Against Watkins & Shepard**

4          Under Nevada law, an employer can be liable for the wrongful acts of employees committed

5   within the scope of employment under three alternative theories:

> (a) The employer had advance knowledge that the employee was unfit for the
> purposes of employment and employed the employee with a conscious disregard for
> the rights or safety of others;
> (b) The employer expressly authorized or ratified the wrongful act of the employee for
> which the damages are awarded; or
> (c) The employer is personally guilty of oppression, fraud or mistake, express or
> implied.

10  Nev. Rev. Stat. § 42.007(1); *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 257 (Nev.

11  2008); *Kennedy v. Carriage Cemetery Servs, Inc.*, 727 F. Supp. 2d 925, 936 (D. Nev. 2010).

12         This Court has stated that it finds the "majority rule" for negligent hiring to be persuasive:

13  "Most of the courts to address the question have noted that the bar to a negligent hiring or training

14  action after an employer admits the employee was acting within the scope of employment ('the

15  *McHaffie* rule') is the majority rule."  *Cruz v. Durbin*, No. 2:11-cv-0342, 2011 WL 1792765, at *3

16  (D. Nev. May 11, 2011); Doc. #76 at 5.  However, the "purpose of the rule is not furthered by

17  dismissing an allegedly redundant claim where the defendant could possibly be liable on the

18  allegedly redundant claim but not on the other claim, or where liability on the allegedly redundant

19  claim would support an additional measure of damages that liability on the other claim alone would

20  not support."  *Cruz*, 2011 WL 1792765 at *3.  Thus, even when the employer admits that the

21  employee was acting within the course and scope of his employment, a plaintiff may be able to

22  recover punitive damages directly against the employer if the plaintiff establishes that the hiring or

23  training of the employee exceeded recklessness or gross negligence.  *See id.* at *4 ("[A]n

24  employer's fault in hiring and training is different from an employee's fault in driving.");

25  NRS § 42.005.

26  ///

Plaintiffs argue that a jury could find Watkins & Shepard liable for punitive damages because the company ratified Britt's conduct, which itself surpassed gross negligence.  Doc. #94 at 17-18.  Plaintiffs cite *Smith's Food & Drug Centers v. Bellegarde*, in which the Nevada Supreme Court adopted the Restatement (Second) of Torts and held that an employer can be liable for punitive damages for the conduct of its employees because the employer ratified the conduct by never punishing or reprimanding its employees for negligent conduct.  958 P.2d 1208, 1214 (Nev. 1998).  Plaintiffs argue that Watkins & Shepard can be liable for punitive damages for Britt's negligence under *Bellegarde* because the evidence indicates that Britt was never suspended or reprimanded after the accident.  Doc. #94 at 18.  The Supreme Court of Nevada expressly overruled *Bellegarde* in *Thitchener*, 192 P.3d at 256.  Specifically, the Court held that to recover punitive damages directly from an employer for the acts of an employee, the plaintiff must show that the employer had knowledge of the employee's acts, ratified the acts, or was personally guilty under NRS § 42.007(1), but also that the employer acted with malice, fraud, or oppression in conscious disregard for the safety of others as defined by NRS § 42.001.  *Id.* at 256-57.

Under *Thitchener*, Watkins & Shepard can be directly liable for punitive damages based on Britt's negligence if Wright can establish that Watkins & Shepard ratified Britt's conduct by negligently hiring and training him, and/or failing to suspend or reprimand him for dangerous driving in conscious disregard for the safety of others.[3]  Defendants argue that even if there are disputed facts regarding Britt's employment, there is no evidence that Watkins & Shepard acted with malice, oppression, or fraud in conscious disregard for the safety of others as is necessary for Wright to recover punitive damages directly from Watkins & Shepard under Nevada law.  Doc. #90 at 10.  First, there is no admissible evidence that Britt was unfit for employment, or improperly

---

[3] Before addressing the merits of Wright's claims, Defendants argue that the Court should disregard Wright's claim for punitive damages against Watkins & Shepard because Wright did not plead a claim for punitive damages against Watkins & Shepard in its complaint.  Doc. #90 at 8.  The Court disagrees.  *See McConnell v. Wal-Mart Stores, Inc.*, No. 2:12-cv-1601, 2013 WL 5278637, at *2 (D. Nev. Sept. 17, 2013) ("Punitive damages are not a cause of action, [] but a measure of damages.").

trained or supervised. *Id.* at 11. Second, there is no evidence that any Watkins & Shepard officer, director, or manager had advance knowledge that Britt could be dangerous or that he was likely to injure a pedestrian. *Id.* Third, there is no evidence that any Watkins & Shepard officer, director, or manager authorized or ratified Britt's conduct. *Id.* Finally, no Watkins & Shepard officer, director, or manager directly engaged in malice, fraud, or oppression as defined by § 42.001. *Id.*

The Supreme Court of Nevada has held that "[a]n employer has a general duty to exercise reasonable care to ensure that an employee is properly trained and supervised in the performance of his or her position." *Vaughan v. Harrah's Las Vegas, Inc.*, No. 46821, at *2 (Nev. 2008) (citing *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996)). Courts are reluctant to find negligent hiring or training without evidence that the employee improperly performed daily tasks or was inadequately supervised. *Compare Vaughan*, No. 46821 at *2 (finding no negligent training in a sexual harassment case where the defendant was experienced when hired and there was no evidence of negligent supervision or that the employee was unable to adequately perform daily tasks), *with Hall*, 930 P.2d at 99 (finding that a jury could find that an employer had negligently hired and trained a bouncer based on evidence available to the employer that the bouncer had been engaged in multiple fights prior to being hired).

Here, the evidence indicates that Watkins & Shepard issued written warnings regarding each of Britt's prior violations of company rules and urged compliance. Additionally, Britt underwent training that included reviews of safety issues related to city and freeway driving. Doc. #94, Ex. 7 at 11:12-15. For the freeway driving training session, a Watkins & Shepard trainer observed Britt driving on the freeway, how he merged onto and off of the freeway, overall speed, and upshifting and downshifting procedures on different grades. *Id.* at 31:13-18. Britt was told during this training session that he should use additional caution if he approached an accident scene or a vehicle pulled over to the side of the road. *Id.* at 31:19-24.

The Court finds that viewing the evidence in the light most favorable to Wright, the parties have presented no evidence on which a reasonable jury could find that Watkins & Shepard

negligently hired and trained Britt with a conscious disregard of the safety of others.  *See Liberty Lobby*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").  In the absence of evidence that Watkins & Shepard engaged in negligent hiring and training, a direct claim for punitive damages against Watkins & Shepard fails as a matter of law because there is no evidence that Watkins & Shepard ratified Britt's conduct or acted with malice in conscious disregard for the safety of others.  *See* NRS § 42.007; § 42.001; *Thitchener,* 192 P.3d at 256-57.  Accordingly, no reasonable jury could impose punitive damages against Watkins & Shepard beyond any punitive damages imposed vicariously for Britt's conduct.[4]

### B.  Punitive Damages Against Britt

Defendants argue that the Court should grant summary judgment as to the punitive damages claim against Britt because even if all disputed facts are shown to be true, Plaintiffs cannot establish that Britt intended to injure Wright, or acted in conscious disregard of the rights and safety of others.  Doc. #90 at 12.  Plaintiffs argue that their evidence does not need to establish that Britt *intended* to injure Wright, but just that he knew of "the probable harmful consequences of a wrongful act" and still acted with "a willful and deliberate failure to avoid those consequences."  Doc. #94 at 18 (quoting NRS § 42.001(1)).  The NRS states that to justify punitive damages, the defendant must have been guilty of oppression, fraud, or malice, and malice is defined as "conduct which is intended to injure a person *or* despicable conduct which is engaged in with a conscious disregard of the rights or safety of others."  NRS §§ 42.001(3) (emphasis added); 42.005(1).  "Conscious disregard" is defined as "the knowledge of the probable harmful consequences of a

---

[4] Wright also argues that a jury could find Watkins & Shepard liable for punitive damages based on NRS § 484D.685, which states that devices, like mirrors, cannot extend more than ten inches on each side of the vehicle, and the vehicle's total width must not exceed 126 inches.  Wright argues that Watkins & Shepard violated this statute because the mirrors on Britt's truck extended twelve inches on each side.   Defendants argue that this statute is immaterial because even with the twelve-inch mirrors, the total width of Britt's truck was 120 inches, below the statutory maximum.  However, even if Watkins & Shepard's twelve-inch mirrors violated the statute, no reasonable jury could find that this was evidence of Watkins & Shepard acting with malice in conscious disregard for the safety of others.

wrongful act and a willful and deliberate failure to act to avoid those consequences."  § 42.001(1).

Plaintiffs allege a number of facts that, if proven, could lead a reasonable jury to find that Britt was liable for punitive damages.  Britt testified that he could see Reiger's truck, but chose to enter the northbound lane to pass the SUV rather than wait to pass the SUV until it was entirely safe to do so.  Doc. #94 at 19; *id.*, Ex. 7 at 139:6-8, 149:1-5.  Britt stated in his deposition that flashers are used "to notify other drivers that . . . there's a hazardous situation . . . for your own safety."  Doc. #94 at 21; *id.*, Ex. 7 at 50:18-21.  Plaintiffs argue that Britt's statement that he saw Reiger's truck and noticed that the flashers were on before he started to pass the SUV establishes conscious disregard.  *Id.* at 19.  Plaintiffs emphasize that Defendants' accident expert stated that based on the skid marks at the scene of the accident, "it appears that the pedestrian was perceived by the driver well in advance of the point of impact."  Doc. #94 at 20; *id.*, Ex. 19.  Britt decided to pass the SUV in the southbound lane despite seeing Reiger's truck pulled over to the side of the northbound lane with its flashers on, and despite the fact that he could not see anything past the truck.  Doc. #94 at 20-21; *id.*, Ex. 7 at 140:22-24, 143:4-11.  Finally, Britt says that he "turned away" when it became clear that he was going to hit Wright, and that he was moving so fast that he could not stop or swerve in time to avoid the accident.  *Id.* at 21; *id.*, Ex. 7 at 152:6-10, 160:2-4.

Defendants argue that, even if these facts are proven, plaintiffs cannot show that Britt acted "with a culpable state of mind."  Doc. #90 at 13.  Defendants emphasize that Britt's actions do not rise to the malice standard because he "could not see Mr. Wright standing in the highway, did not know Mr. Wright was standing in the middle of the highway, and did not expect Mr. Wright to be standing in the middle of the highway."  *Id.* at 15.  Defendants also argue that Wright himself was partially at fault because "a driver is not required to anticipate a pedestrian will be crossing a road at any point other than a crosswalk."  *Id.* at 14 (citing *Turnbow v. Wasden*, 608 F. Supp. 237, 242 (D. Nev. 1985)).

A plaintiff can recover punitive damages if "the district court makes a threshold determination that a defendant's conduct is subject" to punitive damages.  *Thitchener*, 1192 P.3d at

11

252-53.  Once the court makes this finding, "the decision to award punitive damages rests entirely within the jury's discretion."  *Id.*  Express malice—intent to injure someone—is not applicable here.  Britt may be liable for punitive damages based on an implied malice theory, however, if Plaintiffs establish that Britt acted with "conscious disregard of the rights or safety of others," or "knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences."  NRS § 42.001(1); *Racine v. PHW L.V., LLC*, No. 2:10-cv-1651, 2014 WL 4354111, at \*16 (D. Nev. Sept. 2, 2014).  In order to establish that a defendant's conduct constitutes conscious disregard, the conduct must at a minimum "exceed mere recklessness or gross negligence."  *Thitchener*, 1192 P.3d at 255.

Applying Nevada law, a number of courts have found that plaintiffs can seek punitive damages from individuals or entities who are directly responsible for injuries when they acted with conscious disregard of the safety of others but short of express malice.  In *Austin v. C & L Trucking, Inc*, the United States District Court for the District of Nevada held that punitive damages were available against a truck driver because he drove despite knowledge that his brakes were defective.  610 F. Supp. 465, 473 (D. Nev. 1985).  The court found that punitive damages were available because driving on the highway despite knowledge that your truck has defective brakes "shows such wanton disregard for the safety of others and a willingness to injure that the requisite malice in fact for punitive damages" was present.  *Id.*  In *White v. Ford Motor Co.*, the Ninth Circuit Court of Appeals held that a jury could find the defendant car manufacturer liable for punitive damages when one of its vehicles rolled and killed a three-year-old child because the company knew about a parking brake defect that could cause vehicles to roll, but let the potentially dangerous vehicle enter the market.  312 F.3d 998, 1010 (9th Cir. 2002).  The Court reasoned that under Nevada law, "punitive damages [can] be awarded on the theory that 'a conscious disregard for the safety of others amount[s] to implied malice.'"  *Id.* at 1012 (quoting *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1056 (9th Cir.1997)).

///

The Court finds that there are disputed facts as to whether Britt acted with malice in conscious disregard of the rights of others when he decided to pass the SUV despite seeing Reiger's truck on the side of the road with its hazards flashing. First, the parties dispute the location where Wright was standing when Britt moved to the northbound lane to pass the SUV. Second, Defendants allege that Britt never could have anticipated Wright's presence on the shoulder, but Britt himself stated that he saw the hazard lights of Reiger's truck long before he passed and knew that the blinking lights indicated a potential hazardous situation, and that pedestrians could be present. Third, the parties dispute the moment at which Britt saw Wright, and whether Britt could have swerved or taken other action to avoid hitting Wright. Fourth, the parties continue to differ on the amount of sleep Britt had the night before the accident, whether he properly logged the time that he filled his gas tank, and whether these factors had an impact on the accident. A jury, not the Court, must resolve these disputes of material fact. *See Liberty Lobby*, 477 U.S. at 248. The Court finds that a reasonable jury could find that Britt's actions constituted malice with conscious disregard for the safety of others and award punitive damages. Accordingly, the Court denies Defendants' Motion for Partial Summary Judgment regarding punitive damages against Britt.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that Defendants' Renewed Motion for Partial Summary Judgment (Doc. #90) is GRANTED in part and DENIED in part. The Motion for Partial Summary Judgment regarding punitive damages against Watkins & Shepard is GRANTED. The Motion for Partial Summary Judgment regarding punitive damages against Britt is DENIED.

IT IS SO ORDERED.

DATED this 13th day of November, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

13